James J. Conroy, J.
In this action for damages for breach of contract, the plaintiff charges that the defendants breached their written contract with him, and that he was compelled to complete the work called for by the contract and was damaged thereby.
The plaintiff was the contractor on a project for the Corps of Army Engineers at Orangeburg, New York and engaged the defendants as subcontractors to do a part of the work involved in the said project.
By written contract dated February 2, 1956 the defendants agreed to “ trench for the installation of a water line as per the plans ” in certain areas specified in the said contract. Plans had been prepared by the army engineers and such plans were furnished to the defendants prior to the commencement of the work. The work was to be done in two “ legs.” The first leg of the work was done to the approval of all concerned. It was the testimony of the plaintiff that the plans as drawn to scale indicated that the water line was to be laid 18 feet from the center line of an access road then in the course of construction. *1072 The trench for said pipe was to be dug for a distance of some 800 feet along this access road, and this was to constitute the second leg of the work.
On the day the work was actually started on the trench — June 13, 1956 — the plaintiff visited the site and advised the man operating the machine which was digging the ditch that the line of the trench was not in the proper place and would not be acceptable. Later that same day the plaintiff advised the defendant Rodway to the same effect. Rodway was advised that the trench would have to be dug further to the west of the access road but he insisted that he was digging in the place specified by the plans and would not trench further to the west.
The general surrounding terrain at the place where the work was being done was composed of seamy traprock. When the access road was being prepared it was necessary to blast rock along its course and there had been what was described as over-blasting. This was explained as blasting which affected the rock not only on that portion of the road which was to have the hard surface, but for some distance on each side of the road. The defendants contended that it they had been allowed to continue the trench along the line they had started, it would have proceeded along a line which had been over-blasted and would not have required a great amount of blasting on their part, but to trench along the line indicated by the plaintiff would have required blasting through solid rock.
The plaintiff contended that the line of trench as started by the defendants was not far enough away from the road itself, and that a water line laid in such a trench would have been under the shoulder of the road or the ditch adjacent to the road when the said access road was completed. Plaintiff contended this would not be good engineering practice and would not be and was not acceptable to the army engineers.
There was considerable dispute as to just where by actual measurement the trench which was commenced by the defendants was located in reference to the road. There was also considerable dispute as to whether the plaintiff had, prior to the commencement of the work, laid out a lime line along the exact route the trench was to be dug.
The only representative of the army engineers called to testify was the assistant to the resident engineer who stated that although he was not supervising that particular segment of the work, he was called to the site on the morning of June 13, 1956 in the absence of the resident engineer, and that he saw where the defendants had started the trench, and that such location was not in accordance with the plans and was not *1073 acceptable to the army engineers. There was some testimony that plans, such as those presented in this case, would allow for some leeway and that under certain circumstances the contractor or subcontractor would not be held to the mathematically correct or exact location of a water line.
However, from the greater weight of evidence in this case the court finds that the trench as started by the defendants did not comply with the plans and was not acceptable to the army engineers. It is clear that these defendants made an improvident contract and this must have been apparent to the more experienced plaintiff, but this alone would not relieve the defendants from the performance of their contract. It is a well settled rule of law that a party must fulfill his contractual obligations. (Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377, 381.) The defendants refused to trench in the location directed by the plaintiff and were ordered to discontinue the work, which they did.
Thereafter the plaintiff requested the defendants to complete the work along the line indicated by him, and upon their failure so to do the work was completed by the plaintiff or by others hired by him.
The contract price for all of the work was $3,500. At the time the defendants ceased work they had been paid $1,606.50. Had they completed the contract there would have been due them the balance of $1,893.50. The plaintiff testified that it cost him $5,440.64 to complete the trench. This sum is exaggerated. I find from the evidence that the fair and reasonable cost to complete the trench in accordance with the terms of the contract was $4,772.64.
I therefore find that the plaintiff was damaged in the sum of $2,879.14. The answer herein admits the partnership of the defendants and the making of the contract. It is, therefore, directed that the clerk enter judgment for the plaintiff against both the defendants in the sum of $2,879.14.